UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JENNIFER NIN and DIANNE TRITSCHLER,

                                    Plaintiffs,

                    -against-

                                                        19-cv-1546(SJF)(AKT)

COUNTY OF SUFFOLK, SUFFOLK COUNTY EXECUTIVE,
STEVEN BELLONE, SUFFOLK COUNTY POLICE
COMMISSIONER GERALDINE HART, SUFFOLK
COUNTY PISTOL LICENSING BUREAU EXECUTIVE
OFFICER SGT. WILLIAM WALSH, SUFFOLK COUNTY
COMMANDING OFFICER OF THE PISTOL LICENSING
BUREAU LIEUTENANT MICHAEL KOMOROWSKI,
PISTOL LICENSING BUREAU POLICE OFFICER MARC
SFORZA, TOWN OF ISLIP, ANGIE CARPENTER, TOWN
SUPERVISOR, DIRECTOR OF AIRPORT SECURITY
KEVIN BURKE, ISLIP TOWN PERSONNEL DIRECTOR
ARTHUR ABBATE, AIRPORT COMMISSIONER SHELLY
LAROSE-ARKEN, SUFFOLK COUNTY PISTOL LICENSING
BUREAU INVESTIGATOR NICHOLAS LORUSSO and
SUFFOLK COUNTY POLICE DEPARTMENT DETECTIVE
SGT. MICHAEL FLANAGAN,

                                    Defendants.

**COUNTY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION PURSUANT
TO RULE 12(c) FOR JUDGMENT ON THE PLEADINGS**

DATED:        Hauppauge, New York
              April 28, 2020
                                    Respectfully submitted,

                                    Dennis M. Cohen
                                    Acting County Attorney
                                    Attorney for County Defendants
                                    H. Lee Dennison Building
                                    100 Veterans Memorial Highway
                                    P. O. Box 6100
                                    Hauppauge, New York 11788

                                    By:  Arlene S. Zwilling
                                    Assistant County Attorney

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

RULE 12(B)(6) .......................................................................................................................... 5

POINT I
PLAINTIFFS STATE NO COGNIZABLE § 1983 CLAIM............................................... 6

    A.  The Suspension of Plaintiffs' Pistol Licenses Does Not
        Implicate the Second Amendment ........................................................... 6

    B.  The Suspension of Plaintiffs' Pistol Licenses Did Not Deprive
        Them of Due Process ..................................................................................... 9

    C.  Nin Does Not claim to Have engaged in Speech Protected
        by the First Amendment................................................................................10

    D.  The Proscription Against Plaintiffs Possessing Handguns
        During Their License Suspensions Does Not Violate Their
        Constitutional Rights ....................................................................................12

    E.  Plaintiffs Are Not Protected by the Eighth Amendment .........................13

    F.  The Fifth Amendment is Not Applicable to Plaintiffs' Claims ................13

POINT II
NO CLAIMS ARE STATED AGAINST INDIVIDUAL DEFENDANTS
SINCE PLAINTIFFS DO NOT ASSERT THAT THEY PERSONALLY
PARTICIPATED IN CONSTITUTIONAL VIOLATIONS ..........................................13

POINT III
INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY...................15

POINT IV
NIN MAKES OUT NO COGNIZABLE CLAIMS FOR CONSPIRACY
TO VIOLATE HER CONSTITUTIONAL RIGHTS .......................................................18

CONCLUSION ........................................................................................................................19

## TABLE OF AUTHORITIES

*Amore v. Novarro,*
  624 F.3d 522 (2d Cir. 2010) ............................................................................................ 15

*Aron v. Becker,*
  48 F. Supp. 3d 347 (N.D.N.Y 2014) ................................................................................ 10

*Ashcroft v. al-Kidd,*
  563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) .......................................... 15

*Back v. Hastings On Hudson Union Free Sch. Dist.,*
  365 F.3d 107 (2d Cir. 2004) ............................................................................................ 14

*Baker v. McCollan,*
  443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979) .................................................. 6

*Bd. of Regents of State Colleges v. Roth,*
  408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) .................................................. 9

*Biganini v. Gallagher,*
  293 A.D.2d 603, 742 N.Y.S.2d 73 (2002) ....................................................................... 9

*Boss v. Kelly,*
  306 F. App'x 649 (2d Cir. 2009) ................................................................................... 7, 8

*Bryant v. New York State Educ. Dep't,*
  692 F.3d 202 (2d Cir. 2012) ............................................................................................. 9

*Castanza v. Town of Brookhaven,*
  700 F. Supp. 2d 277 (E.D.N.Y. 2010) ........................................................................... 13

*Ciambriello v. Cty. of Nassau,*
  292 F.3d 307 (2d Cir. 2002) ........................................................................................... 18

*City of Oklahoma City v. Tuttle,*
  471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) ................................................ 6

*Curley v. Vill. of Suffern,*
  268 F.3d 65 (2d Cir. 2001) ............................................................................................. 11

*D.C. v. Heller,*
  554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) .............................................. 8

*Dean v. Blumenthal,*
  577 F.3d 60 (2d Cir. 2009) ............................................................................................. 16

*Dorsett v. Cty. of Nassau*,
  732 F.3d 157 (2d Cir. 2013) ........................................................................... 11

*Dwares v. City of New York*,
  985 F.2d 94 (2d Cir. 1993) .............................................................................. 18

*Educ. of the City Sch. Dist. of N.Y.*,
  631 F.3d 57 (2d Cir. 2011) ............................................................................... 5

*Fabrikant v. French*,
  691 F.3d 193 (2d Cir. 2012) ........................................................................... 16

*Garcia v. Does*,
  779 F.3d 84 (2d Cir. 2015) .............................................................................. 16

*Grice v. McVeigh*,
  873 F.3d 162 (2d Cir. 2017) ....................................................................... 15, 17

*Harlen Assocs. v. Inc. Vill. of Mineola*,
  273 F.3d 494 (2d Cir. 2001) ........................................................................... 10

*Harlow v. Fitzgerald*,
  457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) .............................. 15

*Harrington ex rel. Harrington v. Cty. of Suffolk*,
  2009 WL 2567959 (E.D.N.Y. Aug. 17, 2009) .............................................. 17

*Henry v. County of Nassau*,
  2020 WL 1185283 (E.D.N.Y. Mar. 12, 2020) ........................................ 7, 8, 12

*In Re Douglas L.B.*,
  44 Misc. 2d , 983 N.Y.S.3d 772 (Cty. Ct. Otsego Cty. 2014) ......................... 9

*Johnson El ex rel. Johnson v. DeProspo*,
  2019 WL 6311882 (S.D.N.Y. Nov. 22, 2019) ............................................. 9, 10

*Kachalsky v. Cty. of Westchester*,
  701 F.3d 81 (2d Cir. 2012) ......................................................................... 7, 8, 12

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011) .............................................................................. 6

*LaVertu v. Town of Huntington*,
  2014 WL 2475566 (E.D.N.Y. Apr. 4, 2014) .................................................. 11

*Leogrande v. Suffolk Cty.,*
   2016 WL 889737 (E.D.N.Y. Mar. 9, 2016) ........................................................... 16

*Littlejohn v. City of New York,*
   795 F.3d 297 (2d Cir. 2015) ................................................................................. 14

*Malley v. Briggs,*
   475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) ..................................... 15

*Martino v. Nassau Cty. Police Dep't,*
   66 A.D.3d 781, 887 N.Y.S.2d 204 (2009) ............................................................ 10

*McClellan v. Smith,*
   439 F.3d 137 (2d Cir. 2006) ................................................................................. 16

*McCrary v. Marks,*
   2018 WL 4204244 (E.D.N.Y. Sept. 4, 2018) ......................................................... 6

*Messerschmidt v. Millender,*
   565 U.S. 535, 132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012) ..................................... 15

*Mishtaku v. City of New York,*
   2015 WL 13002182 (S.D.N.Y. May 4, 2015) ......................................................... 7

*Mitchell v. Forsyth,*
   472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) ..................................... 16

*Moore v. Andreno,*
   505 F.3d 203 (2d Cir. 2007) ................................................................................. 15

*Mullenix v. Luna,*
   136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) ............................................................ 17

*Napolitano v. Ryder,*
   2019 WL 365710 (E.D.N.Y. Jan. 30, 2019) ........................................................ 8, 10

*Nash v. Nassau Cty.,*
   150 A.D.3d 1120, 52 N.Y.S.3d 670 (N.Y. App. Div. 2017) ................................... 9

*Pangburn v. Culbertson,*
   200 F.3d 65 (2d Cir. 1999) ................................................................................... 18

*Papaioannou v. Kelly,*
   14 A.D.3d 459, 788 N.Y.S.2d 378 (2005) .............................................................. 7

*Pearson v. Callahan*,
    555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) ...................................................... 16

*Perros v. Cty. of Nassau*,
    238 F. Supp. 3d 395 (E.D.N.Y. 2017) ............................................................................... 7

*Reed v. Medford Fire Dep't, Inc.*,
    806 F. Supp. 2d 594 (E.D.N.Y. 2011) ............................................................................... 6

*Russo v. City of Bridgeport*,
    479 F.3d 196 (2d Cir. 2007) ........................................................................................... 16

*Salahuddin v. Goord*,
    467 F.3d 263 (2d Cir. 2006) ........................................................................................... 15

*Saucier v. Katz*,
    533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) ................................................... 17

*Simpson v. Town of Warwick Police Dep't*,
    159 F. Supp. 3d 419 (S.D.N.Y. 2016) ............................................................................... 13

*Smith v. Brown*,
    296 F. Supp. 3d 648 (S.D.N.Y. 2017) ............................................................................... 13

*Spanos v. City of New York*,
    2016 WL 3448624 (S.D.N.Y. June 20, 2016) ..................................................................... 10

*Sturm v. Alpha Recovery Corp.*,
    2020 WL 1140425 (E.D.N.Y. Mar. 6, 2020) ....................................................................... 5

*Sykes v. James*,
    13 F.3d 515 (2d Cir. 1993) ............................................................................................... 6

*Thomas v. Roach*,
    165 F.3d 137 (2d Cir. 1999) ........................................................................................... 16

*Toussaint v. City of New York*,
    2018 WL 4288637 (E.D.N.Y. Sept. 7, 2018) ....................................................................... 7

*Vaher v. Town of Orangetown, N.Y.*,
    916 F. Supp. 2d 404 (S.D.N.Y. 2013) ............................................................................... 7

*Viteritti v. Inc. Vill. of Bayville*,
    831 F. Supp. 2d 583 (E.D.N.Y. 2011) ............................................................................... 13

*Washington v. Cty. of Rockland*,
   373 F.3d 310 (2d Cir. 2004) .............................................................................. 6

*Weinstein v. Krumpter*,
   386 F. Supp. 3d 220 (E.D.N.Y. 2019) ...................................................... passim

*White v. Pauly*,
   137 S. Ct. 548, 196 L. Ed. 2d 463 (2017) ........................................................ 17

*Zalaski v. City of Hartford*,
   723 F.3d 382 (2d Cir. 2013) ............................................................................ 17

*Zellner v. Summerlin*,
   494 F.3d 344 (2d Cir. 2007) ............................................................................ 15

## PRELIMINARY STATEMENT

The County of Suffolk, Suffolk County Executive Steven Bellone, Suffolk County Police Commissioner Geraldine Hart, Suffolk County Pistol Licensing Bureau Executive Officer William Walsh, Suffolk County Commanding Officer of the Pistol Licensing Bureau Michael Komorowski, Pistol Licensing Bureau Officer Marc Sforza, Suffolk County Pistol Licensing Bureau Investigator Nicholas LoRusso and Suffolk County Police Department Detective Sgt. Michael Flanagan, defendants in this action pursuant to 42 U.S.C. § 1983 (collectively, "County defendants") brought by plaintiffs Jennifer Nin ("Nin") and Diane Tritschler ("Tritschler"), submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings dismissing the Complaint as against them.

This case grows out of a disagreement between Nin and her employer, defendant Town of Islip.  Nin was employed as a security officer at McArthur Airport, which the Town of Islip operates.  Tritschler is Nin's mother, and a retired airport security officer herself. Both Nin and Tritschler possess Suffolk County "carry" pistol licenses (also known as "proper cause licenses") issued pursuant to N.Y. Penal Law § 400.00 (2)(f).

According to the Complaint, on or about October 29-30, 2018, Nin became involved in a verbal disagreement with her co-worker Robert Finn (¶36-41).  She confronted Finn and stated to him that if anything happened because of a text message sent to the wife of their co-worker, Anthony Passalacqua, Finn would not need FMLA time because he would be a stay at home dad (¶38).[1]  Finn filed a complaint about Nin's behavior with the Suffolk County Police Department ("the Police Department") (¶40). Defendant Burke, the supervisor

---

[1]      Passalacqua is a plaintiff in the related action of *Passalacqua v. County of Suffolk, et al.* CV19-5738 (SJF)(AKT) that is now pending before this Court.

of Nin and Finn, contacted the Police Department and sought to have Finn's complaint upgraded to a criminal complaint of aggravated harassment (¶41). Based upon these events, the Police Department suspended Nin's pistol license (¶42). On or about October 31, 2018, Nin was called into Defendant Burke's office and ordered to surrender her firearms to two non-party Suffolk County Police Officers (¶43). The three instructed her to report home to surrender her other weapons (¶44). The non-party officers accompanied Nin to her home, entered the residence and retrieved her remaining firearms and pistol license (¶45). The non-party officers also took Tritschler's weapon and pistol license because she resided with Nin (¶46). Nin then received a letter dated November 1, 2018 signed by defendant William Walsh, the Executive Officer of the Suffolk County Police Department's Pistol Licensing Bureau ("the PLB")[2] informing her that due to the incident of October 30, 2018, her pistol license was suspended pending investigation (¶55; Exhibit C). The letter further directed her to provide a written statement about the incident and to contact defendant PLB officer Marc Sforza ("Sforza") if she wished to inquire about the suspension (¶55). Tritschler received a similar suspension letter, also dated November 1, 2018, stating that her license was suspended pending further investigation because she lived in the same home as Nin, directing her to submit an explanatory statement regarding the situation, and to contact Sforza if she wished to inquire about the suspension (¶56, Exhibit D). Nin contacted Sforza and asked why the PLB was investigating since the Town had already investigated the incident and determined the allegations against her were false. Sforza informed her that the

---

[2]     Pursuant to New York Penal Law §265.10, the licensing officer for pistol licenses in the five western towns of Suffolk County is the Suffolk County Police Commissioner. The PLB is the unit of the Suffolk County Police Department that handles licensing of individuals.

2

PLB was doing a separate investigation, and that she should mention her employer's investigation in her statement (¶ 57). On or about November 19, 2018, the Town terminated Nin's employment (¶62).

On December 17, 2018, Nin again contacted Sforza to inquire when her license would be returned. She told him that Finn had refused to sign a criminal complaint against her. Sforza told her that Finn had up to a year to pursue a criminal charge against her (¶68). Nin complained to Sforza that she needed her license back to save her job. Sforza told her that her employment situation was not a concern to the PLB. Nin stated to Sforza that this was a violation of her civil rights. He responded that the PLB was not violating her rights and had up to 18 months to conclude its investigation (¶69). On December 11, 2018, defendant Sgt. Flanagan spoke with Nin by phone and informed her that she was in possession of an illegal weapon (¶79). Passalacqua advised Flanagan that Nin no longer had the weapon because she had given it to him (¶81). Thereafter, Sgt. Flanagan seized some weapons from Passalacqua (¶82).[3]

The Complaint does not allege that defendants Suffolk County Executive Steve Bellone, Suffolk County Police Commissioner Geraldine Hart, Investigator Nicholas LoRusso, or Michael Komorowski took any action that affected Nin and Tritschler.

The Complaint purports to set forth the following causes of action pursuant to 42 U.S.C.A. § 1983:

    a)     First------for denial of plaintiffs' rights under the Second Amendment and due process clause; and plaintiff Nin's First Amendment rights.

---

[3]    Plaintiffs' pistol licenses and weapons were returned after commencement of this action.

b)      Third[4]-----for denial of plaintiffs' rights under the Fourth, Fifth, Eighth and Fourteenth Amendments based on the seizure of plaintiffs' property without due process.

c)      Fourth----for denial of Nin's Eighth Amendment rights.

d)      Fifth------for County defendants' conspiracy with the Town to violate Nin's constitutional rights by terminating her employment.

Plaintiffs do not clearly identify the particular actions allegedly taken by County defendants that infringed their constitutional rights. As best as County defendants can ascertain, plaintiffs apparently claim that a) their Second Amendment rights and their right to due process under the Fourteenth Amendments were violated by the suspension of their pistol licenses; c) their Fourth, Fifth, Eighth and Fourteenth Amendment rights were abridged by the requirement that they surrender their handguns for the duration of the suspension of their licenses; and c) defendants conspired to deny Nin her constitutional rights.

As County defendants now explain, plaintiffs state no cognizable § 1983 claim against County defendants because they point to no conduct by County personnel that amounted to a violation of their constitutional rights.  The suspension of their pistol licenses and the required transfer of their weapons to the Police Department during the suspensions did not transgress the Second Amendment or the due process guarantee. Nin does not claim to have engaged in any conduct protected by the First Amendment.  The Fifth Amendment has no relevance to plaintiffs' situation since it does not apply to local governments or their employees.  Similarly, the Eighth Amendment has no bearing upon plaintiffs' circumstances because it applies only to convicted prisoners.  Nin neglects to plead more than a blanket

---

[4]      There is no second cause of action in the Complaint.

assertion of a conspiracy in support of her claim that defendants conspired to terminate her employment.  In addition to plaintiffs' failure to allege a violation of a constitutional right, they also fail to aver any personal participation in wrongdoing by individual defendants. Last, individual defendants are protected from § 1983 liability by the doctrine of qualified immunity.

### RULE 12(B)(6) STANDARD

Recently, this Court enunciated the standard to be employed in determining a motion for judgment on the pleadings pursuant to Rule 12(c) as follows:

> In deciding a motion pursuant to Rule 12(c), the Court employs the same standard as in deciding a Rule 12(b)(6) motion to dismiss. *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009). Therefore, to survive a motion pursuant to Rule 12(c), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. The court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011). Although factual allegations are assumed to be true, this principle is "inapplicable to legal conclusions," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (the court is "not bound to accept as true a legal conclusion couched as a factual allegation").

*Sturm v. Alpha Recovery Corp*., 2020 WL 1140425, at *3 (E.D.N.Y. Mar. 6, 2020)

Furthermore, "[i]n deciding a motion for judgment on the pleadings, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Id.*

quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation omitted).

## POINT I

### PLAINTIFFS STATE NO COGNIZABLE § 1983 CLAIM

The foundation of all § 1983 claims is the alleged denial of an identified right guaranteed by the Constitution.  This is because as the Supreme Court has clarified, § 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere*." City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 2242–43, 85 L. Ed. 2d 791 (1985) citing *Baker v. McCollan*, 443 U.S. 137, 140, 144, n. 3, 99 S. Ct. 2689, 2692, 2694, n. 3, 61 L. Ed. 2d 433 (1979).  See also *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To state a valid claim under § 1983, "a plaintiff must show that the conduct in question deprived him of a right, privilege, or immunity secured by the constitution or the laws of the United States." *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 609 (E.D.N.Y. 2011) citing *Washington v. Cty. of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004).   Accord *McCrary v. Marks*, 2018 WL 4204244, at *2 (E.D.N.Y. Sept. 4, 2018).

Plaintiffs' § 1983 claims are fatally flawed because they all lack the underpinning of a constitutional violation.

**A.     The Suspension of Plaintiffs' Pistol Licenses Does Not Implicate the Second Amendment.**

In their first cause of action, plaintiffs assert that defendants intentionally violated their Second Amendment rights by "refusing to issue or refusing to return an individual's right to carry a firearm" (¶107).  Presumably, what they challenge is the suspension of their licenses to carry a pistol and the attendant prohibition against their possession of handguns.

6

Inarguably however, the Second Amendment is not offended by a pistol license officer's decision to suspend or revoke a license or the consequential proscription against possessing a handgun.

As a starting point, it is unquestionable that the Second Amendment does not bar all government action limiting the possession of firearms. In the Second Circuit, the Second Amendment right to bear arms is not a right to hold some particular gun. *Weinstein v. Krumpter*, 386 F. Supp. 3d 220, 230 (E.D.N.Y. 2019) citing *Boss v. Kelly*, 306 F. App'x 649 (2d Cir. 2009) quoting *Vaher v. Town of Orangetown, N.Y.,* 916 F. Supp. 2d 404, 429 (S.D.N.Y. 2013) (collecting cases). In this regard, it is well settled that in the state of New York, "the possession of a handgun is a privilege, not a right." *Perros v. Cty. of Nassau*, 238 F. Supp. 3d 395 (E.D.N.Y. 2017) quoting *Papaioannou v. Kelly*, 14 A.D.3d 459, 788 N.Y.S.2d 378 (2005)(citing cases).

To regulate the ownership and carrying of weapons, New York maintains a general prohibition on the possession of firearms without a license. *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 85 (2d Cir. 2012). Section 400 of the Penal Law is the "exclusive statutory mechanism of the licensing of firearms" in the state of New York. *Henry v. County. of Nassau*, 2020 WL 1185283, at *5 (E.D.N.Y. Mar. 12, 2020) quoting *Kachalsky*, 701 F.3d at 85–86; *Mishtaku v. City of New York*, 2015 WL 13002182, at *4 (S.D.N.Y. May 4, 2015), *aff'd sub nom. Mishtaku v. Espada*, 669 F. App'x 35 (2d Cir. 2016). New York pistol licenses are limited to those who meet the designated requirements including being of good moral character and someone for whom "no good cause exists for the denial of the license." *Toussaint v. City of New York*, 2018 WL 4288637, at *4 (E.D.N.Y. Sept. 7, 2018).

Because it concerns the carrying of weapons in public, as distinct from possessing weapons inside the home, the "proper cause" requirement has been held to fall outside of the "core Second Amendment protections" identified by the United States Supreme Court in *D.C. v. Heller*, 554 U.S. 570, 592, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). *Kachalsky*, 701 F.3d at 94. "[W]hile the state's ability to regulate firearms is circumscribed in the home, 'outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense.'" *Kachalsky*, 701 F.3d at 95.

Suspension and revocation of a pistol license are governed by subsection 11, which provides that "a license may be revoked and cancelled at any time in the city of New York, and in the counties of Nassau and Suffolk, by the licensing officer…" Because § 400.00 (11) "substantially relates to the pertinent government objective of limiting the possession of handguns to law abiding, responsible individuals and there is a reasonable fit between the objective and the law" the statute comports with the Second Amendment. *Weinstein* at 230-232. More generally, Courts in the Second Circuit have "repeatedly upheld" New York's firearm licensing regime under § 400 generally against Second Amendment challenges. *Napolitano v. Ryder*, 2019 WL 365710, at *8 (E.D.N.Y. Jan. 30, 2019) (citing cases).

Since in temporarily suspending plaintiffs' pistol licenses, the PLB was exercising its discretion under § 400.11(c), plaintiffs' rights under the Second Amendment were not transgressed by the suspensions.

Indeed, this Court recently noted the Court of Appeals for the Second Circuit has rejected the theory that there is a constitutional right to a handgun license in this state. *Weinstein*, 386 F. Supp. 3d at 231–32 citing *Boss v. Kelly*, 306 F. App'x 649 (2d Cir. 2009). See *Henry v. County. of Nassau*, 2020 WL 1185283, at *10 (E.D.N.Y. Mar. 12, 2020) citing

*Weinstein*, at 232 (collecting cases) ("Furthermore, numerous courts in this Circuit 'have previously found that there is no constitutional right to a handgun license in New York State' "); *Johnson El ex rel. Johnson v. DeProspo*, 2019 WL 6311882, at *4 (S.D.N.Y. Nov. 22, 2019).

**B.     The Suspension of Plaintiffs' Pistol Licenses Did Not Deprive Them of Due Process.**

Plaintiff's first cause of action also asserts that defendants' actions deprived them of their right to due process. They do not specify any particular conduct that supposedly offended the right or identify what process they were purportedly denied. Nevertheless, any claim that they were deprived of some level of process in connection with their license suspensions is untenable because they lack a protected interest in the licenses.

A procedural due process claim "is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process*." Napolitano v. Ryder*, at *9 quoting *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). Thus, the "requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972).

Licensing officers however, are "vested with broad discretion on determining whether to issue or revoke a license." *Weinstein*, 386 F. Supp. 3d at 231 quoting *Nash v. Nassau Cty.*, 150 A.D.3d 1120, 1121, 52 N.Y.S.3d 670 (N.Y. App. Div. 2017). This discretion extends to the suspension of licenses. *In Re Douglas L.B.*, 44 Misc. 2d 241, 983 N.Y.S.3d 772 (Cty. Ct. Otsego Cty. 2014) citing *Biganini v. Gallagher*, 293 A.D.2d 603, 742 N.Y.S.2d 73 (2002). The "broad significant discretion" entrusted to the licensing officer "precludes any

9

legitimate claim of entitlement." *Toussaint*, at \*7 quoting *Spanos v. City of New York*, 2016 WL 3448624 (S.D.N.Y. June 20, 2016), aff'd, 672 F. App'x 124 (2d Cir. 2017) at \*2 (S.D.N.Y. June 20, 2016) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001)).

Since a pistol license holder has no protected liberty or property interest in continuing to hold their license, they are not entitled to process before or after the license is suspended.  See, e.g. *Napolitano v. Ryder*, at \*9 (noting that plaintiff has no protectable interest in maintaining their license that would entitle them to post-suspension hearing); *Johnson El ex rel. Johnson v. DeProspo*, 2019 WL 6311882, at \*4 (S.D.N.Y. Nov. 22, 2019) (plaintiff has no protected interest that entitles them to due process in connection with license revocation).

In fact, even if plaintiffs had a protected interest in their licenses, there still would be no due process violation in the suspensions because they have an adequate remedy at state law in the form of a proceeding pursuant to N.Y. CPLR Article 78.  *Johnson El ex rel. Johnson*, 2019 WL 6311882, at \*4.  See *Aron v. Becker*, 48 F. Supp.3d 347, 37–71 (N.D.N.Y. 2014) ("an aggrieved pistol permit applicant has well established recourse under N.Y. CPLR Article 78"). See also *Weinstein*, 386 F. Supp. 3d at 231 citing *Martino v. Nassau Cty. Police Dep't*, 66 A.D.3d 781, 781–82, 887 N.Y.S.2d 204 (2009) (adverse licensing decisions may be challenged in state court).

## C.  Nin Does Not Claim to Have Engaged in Speech Protected by the First Amendment.

In the first cause of action, Nin also alleges that her "First Amendment right to speak protected by the First Amendment was denied her by the defendants herein;"  and that her "Second Amendment Constitutional rights were denied her by using the violation of her First

Amendment rights to remove her Second Amendment rights by the defendants herein" (¶98-99).  While these assertions are somewhat abstruse, it seems that Nin attempts to assert that defendants abridged her First Amendment right to free speech by suspending her pistol license in retaliation for something she did.  However, she does not assert that she engaged in any speech protected by the First Amendment, let alone describe its substance or circumstances.

Identification of conduct protected by the First Amendment is a predicate to articulating a viable First Amendment retaliation claim. To plead a First Amendment retaliation claim a plaintiff must show: (1) she has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by her exercise of that right; and (3) the defendant's actions caused her some injury. *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *LaVertu v. Town of Huntington*, 2014 WL 2475566, at *5 (E.D.N.Y. Apr. 4, 2014), report and recommendation adopted in part, 2014 WL 2506217 (E.D.N.Y. June 2, 2014) (plaintiff must allege that they have an interest protected by the First Amendment).

Since Nin completely fails to assert that she engaged in any specific conduct protected by the free speech clause, her §1983 First Amendment claim is deficient.

Moreover, this defect appears to be irremediable since the Complaint avers that it was Finn and Burke's contacts with the Police Department (¶40-56) that motivated County Defendants' actions, and not a desire to retaliate against Nin.

**D.     The Proscription Against Plaintiffs Possessing Handguns During Their License Suspensions Does Not Violate Their Constitutional Rights.**

In conjunction with the suspension of their pistol licenses, plaintiffs were instructed to temporarily transfer their handguns to the Police Department.  In the third cause of action, they assert that their rights under the Fourth, Fifth, Eighth and Fourteenth Amendment rights were violated by what the term is this "seizure" of their property.

However, no seizure occurred.  Plaintiffs were required to surrender their handguns by virtue of the complete prohibition against unlicensed persons possessing handguns that is set forth in N.Y. Penal Law § 400.00 (11)(c), which provides:

> In any instance in which a person's license is suspended or revoked under paragraph  (a)  or  (b) of this subdivision, such person shall surrender such license to the appropriate licensing  official  and any and all  firearms,  rifles, or shotguns owned or possessed by such person shall be surrendered to an appropriate law enforcement agency as provided in  subparagraph  (f)  of  paragraph  one of subdivision a of section 265.20 of this chapter.  In the event such license, firearm, shotgun, or rifle is not surrendered, such items shall be removed and declared a nuisance and any  police  officer or  peace  officer  acting pursuant  to  his  or her special duties is authorized to remove any and  all such weapons.

The prohibition of § 400.00.11(c) has been held to comport with the Constitution. *Weinstein*, 386 F. Supp. 3d at 230–232 (§ 400.00.11(c) does not violate Second Amendment). See also *Kachalsky v. Cty. of Westchester*, 701 F.3d 81 (2d Cir. 2012) (§ 400.00 licensing regime not contrary to Second Amendment); *Henry v. County of Nassau*,  2020 WL 1885283 at *10 (E.D.N.Y. March 12, 2020)(§ 400.11 not in conflict with Second Amendment). Accordingly, no violation of plaintffs' constitutional rights is encompassed by the required surrender of their handguns.

12

**E.     Plaintiffs Are Not Protected by the Eighth Amendment.**

In both the Third and Fourth causes of action, plaintiffs seek to recover under § 1983 for alleged violations of their rights under the Eighth Amendment. Simply put, because plaintiffs do not claim to be convicted prisoners, they cannot invoke the Eighth Amendment. *Smith v. Brown*, 296 F. Supp. 3d 648, 661 (S.D.N.Y. 2017) quoting *Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 443 (S.D.N.Y. 2016) ('there is no viable claim under the Eighth Amendment's prohibition of cruel and unusual punishment because 'the Eighth Amendment applies only to convicted prisoners''').

**F.     The Fifth Amendment is Not Applicable to Plaintiffs' Claims.**

Plaintiffs' third cause of action also includes a claim for the alleged violation of their Fifth Amendment right to due process.  Like plaintiffs' Eighth Amendment claim, this claim is irremediably deficient on its face.  The due process clause of the Fifth Amendment does not apply to local governments or their employees, such as defendants. *Viteritti v. Inc. Vill. of Bayville*, 831 F. Supp. 2d 583, 592 (E.D.N.Y. 2011) quoting *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 288 (E.D.N.Y. 2010) (the Fifth Amendment only applies to actions by the Federal Government.)

### POINT II

### NO CLAIMS ARE STATED AGAINST INDIVIDUAL DEFENDANTS SINCE PLAINTIFFS DO NOT ASSERT THAT THEY PERSONALLY PARTICIPATED IN  CONSTITUTIONAL VIOLATIONS

The Complaint contains no averment that any of the individual defendants personally committed the constitutional violations alleged by plaintiffs.  Indeed, there are no allegations of any conduct at all, good or bad, by County Executive Bellone, Police Commissioner

13

Geraldine Hart, Officer Komorowski or Investigator LoRusso.  The only actions which the Complaint attributes to any individual defendants are that a) Walsh notified plaintiffs that their pistol licenses were suspended (¶ 55-56); b) Sforza informed Nin that the PLB was doing a separate investigation, and she should mention her employer's investigation in her statement (¶ 57); c)  Sforza told Nin that Finn had up to a year to pursue a criminal charge against her (¶68), that her employment situation was not a concern to the PLB, and that the PLB was not violating her rights and had up to 18 months to conclude their investigation (¶69); c)  defendant Sgt. Flanagan spoke with Nin by phone and informed her that she was in possession of an illegal weapon (¶79).

These allegations that Walsh, Sforza and Flanagan merely communicated information to plaintiffs are wholly insufficient to state a § 1983 claim against individual defendants.  An individual can be held liable under § 1983 "only if that individual is 'personally involved in the alleged deprivation'" of the plaintiff's civil rights. *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) quoting *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004).  Personal involvement can be established by showing that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.

*Id*.  Indisputably, the Complaint does not contain a single allegation that any of the individual defendants engaged in any of these four types of conduct.  Thus, in addition to plaintiffs' failure to pled violations of particular constitutional protections, the Complaint states no

cognizable § 1983 claim against individual defendants because it does not assert their personal involvement.

## POINT III

### INDIVIDUAL DEFENDANTS ARE ENTITLED
### TO QUALIFIED IMMUNITY

Even if strictly speaking, individual defendants crossed a constitutional line in their dealings with plaintiffs, they nonetheless are insulated from personal liability by the doctrine of qualified immunity.   Qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).  Accord, *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).  Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments." *Messerschmidt v. Millender*, 565 U.S. 535, 132 S. Ct. 1235, 1244–1245, 182 L. Ed. 2d 47 (2012) quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2085, 179 L. Ed. 2d 1149 (2011).  The qualified immunity standard is forgiving. *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010).  Both the Supreme Court and the Second Circuit have emphasized that "[n]ormally, it is only the 'plainly incompetent or those who knowingly violate the law'— those who are not worthy of the mantle of the office—who are precluded from claiming the protection of qualified immunity." *Moore v. Andreno*, 505 F.3d 203, 214 (2d Cir. 2007) quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

The doctrine's purpose has been described as "balanc[ing] two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009). As the Second Circuit has noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.' " *Leogrande v. Suffolk Cty.*, 2016 WL 889737, at *5 (E.D.N.Y. Mar. 9, 2016) citing *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). Thus, qualified immunity is not merely a defense but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Leogrande*, 2016 WL 889737 quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

Qualified immunity is available in two different sets of circumstances: where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). As to whether the right is clearly established, the "dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 92.

It is the Court's duty to determine if the relevant right was sufficiently established at the time of the alleged wrongdoing, for whether a right was clearly established at the pertinent time is a question of law. *Fabrikant v. French*, 691 F.3d 193, 212 (2d Cir. 2012) citing *Dean v. Blumenthal*, 577 F.3d 60, 67 n. 6 (2d Cir. 2009). Rights must be clearly

16

established in a "particularized" sense, rather than at a high level of generality; and such rights are only clearly established if a court can "identify a case where an officer acting under similar circumstances" was held to have acted unconstitutionally. *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) quoting *White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017). The law must be so clearly established with respect to the "*particular* conduct" and the "specific context" at issue that "every reasonable official would have understood that his conduct was unlawful." *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (emphasis in original) (internal quotation marks omitted). If the illegality of the challenged conduct would not be so apparent, officers are entitled to qualified immunity. See *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013). "In short, if at least some reasonable officers in the defendant's position 'could have believed that the challenged conduct was within the bounds of appropriate police responses,' the defendant officer is entitled to qualified immunity." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 208, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)) (alterations omitted).

At minimum, at the time individual defendants suspended plaintiffs' pistol licenses and took temporary possession of their firearms, it was not clearly established that in the scenario of a workplace dispute, the Constitution curtailed their normal discretion to suspend licenses and assume possession of handguns. Therefore, they are entitled to qualified immunity. The same would be true even if this Court were now to hold as a matter of first impression that such actions by a licensing authority are unconstitutional. *Harrington ex rel. Harrington v. Cty. of Suffolk*, 2009 WL 2567959 (E.D.N.Y. Aug. 17, 2009), aff'd sub nom. *Harrington v. Cty. of Suffolk*, 607 F.3d 31 (2d Cir. 2010)(when court pronounces right for the

first time, qualified immunity protects defendants from liability for earlier abridgements of the right).

Furthermore, since the actions taken by individual defendants were objectively reasonable, they are protected by the defense of qualified immunity on that basis as well.

**POINT IV**

**NIN MAKES OUT NO COGNIZABLE CLAIMS FOR CONSPIRACY TO VIOLATE HER CONSTITUTIONAL RIGHTS**

The fifth cause of action is Nin's claim that her constitutional rights were violated by a conspiracy among all defendants to terminate her employment with the Town.

To survive a motion to dismiss on a §1983 conspiracy claim, a plaintiff must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Complaints containing only conclusory, vague, or general allegations that defendants have engaged in a conspiracy to deprive the plaintiff of their constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello*, 292 F.3d 307 citing *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).

The sole allegation in support of Nin's § 1983 conspiracy claim is that "the defendants joined in a conspiracy to terminate [her] employment….and having no ability to do so under the protections of the Civil Service Law did thereby embark upon intentionally violating her rights" (¶110). Plainly, this single cursory and conclusory allegation is wholly insufficient to make out a claim for conspiracy to violate civil rights.

18

**CONCLUSION**

For the above reasons, defendants' motion pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings dismissing the Complaint as against them should be granted.


Dated:   Hauppauge, New York
     April 28, 2020

                Dennis M. Cohen
                Acting County Attorney
                Attorney for Defendants
                100 Veterans Memorial Highway
                P.O. Box 6100
                Hauppauge, New York 11788

By:    */s/ Arlene S. Zwilling*
                Arlene S. Zwilling
                Assistant County Attorney