2:19–cv–01546-SJF-AKT

# United States District Court

## Eastern District of New York

JENNIFER NIN AND DIANNE TRITSCHLER,

*Plaintiffs*

–v–

COUNTY OF SUFFOLK, SUFFOLK COUNTY EXECUTIVE, STEVEN BELLONE, SUFFOLK COUNTY POLICE COMMISSIONER GERALDINE HART, SUFFOLK COUNTY PISTOL LICENSING BUREAU EXECUTIVE OFFICER SGT. WILLIAM WALSH, SUFFOLK COUNTY COMMANDING OFFICER OF THE PISTOL LICENSING BUREAU LIEUTENANT MICHAEL KOMOROWSKI, PISTOL LICENSING BUREAU POLICE OFFICER MARC SFORZA, TOWN OF ISLIP, ANGIE CARPENTER, TOWN SUPERVISOR, DIRECTOR OF AIRPORT SECURITY KEVIN BURKE, ISLIP TOWN PERSONNEL DIRECTOR ARTHUR ABBATE, AIRPORT COMMISSIONER SHELLY LAROSE-ARKEN, SUFFOLK COUNTY PISTOL LICENSING BUREAU INVESTIGATOR NICHOLAS LORUSSO AND SUFFOLK COUNTY POLICE DEPARTMENT DETECTIVE SGT. MICHAEL FLANAGAN,

*Defendants*

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO SUFFOLK COUNTY DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

Table of Cases ................................................................................. i

Introduction ................................................................................... 1

Procedural litigation history ........................................................... 2

Statement of Facts ......................................................................... 2

The Standard of Review ................................................................. 7


I.   Your Honor Ordered Defendants to return Plaintiffs' Weapons, a Second
     Amendment violation was Recognized, and Defendants cannot meet their
     burden in seeking dismissal on the pleadings provided the facts, policies and
     practices within the Defendant County of Suffolk and the supervisory
     Defendants ............................................................................... 9


II.  Plaintiff Nin was targeted for a single statement, deprived of her firearms and
     subject to conspiracy due to a "spiteful effort" to hurt Plaintiffs, one of which
     had her weapons seized for no apparent reason other than her relationship to
     Ms. Nin ................................................................................... 16


III. Although the weapons are returned, Plaintiffs damages continue and such
     pleadings establish a fifth amendment takings violation ........................... 20


IV.  Defendants are not entitled Qualified Immunity and Defendants offer nothing
     to meet their burden in dismissal, rebutting the pleadings, affidavits or
     exhibits, or seeking qualified immunity ................................................ 21


V.   Plaintiffs respectfully request that Your Honor allow an Amendment to the
     Complaint if not a conversion of the Matter to Summary Judgment with the
     Ordering of Depositions should Your Honor be inclined to grant Defendants
     dismissal on the pleadings ............................................................. 23


Conclusion ................................................................................... 24

# TABLE OF CASES

## CASES

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970)....................................17

*Ashcroft* v. *Iqbal*, 556 U.S. 662,668 (2009)........................................................8

*Astrazeneca AB* v. *Apotex Corp.*, No. 01 Civ. 9351, 2010 U.S. Dist. LEXIS 58044, at *9 (S.D.N.Y. June 8, 2010) ...................................................................8

*Beacon Enterprises* v. *Menzies,*715 F.2d 757, 767 (2d Cir.1983)........................9

*Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)........................................8

*Bell v Burson*, 402 U.S. 535, 539 (1971) .........................................................12

*Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) ............12

*Biswas* v. *City of New York*, 973 F. Supp. 2d 504 (S.D.N.Y. 2013) ...............14

*Board of Regents v. Roth*, 408 U. S. 564 (1972) .............................................12

*Brass* v. *Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) ........................8

*Brewster v. Nassau County*, 349 F. Supp.2d 540 (E.D.N.Y. 2004).....................19

*Ciambriello* v. *Cty. of Nassau*, 292 F.3d 307 (2d Cir. 2002) ..........................13

*Cinevert v. Varsity Bus Co.,* No. 12-CV-1223 RRM VVP, 2014 WL 4699674, at *6 (E.D.N.Y. Sept. 22, 2014)...................................................................24

*Coakley v. Jaffe*, 49 F.Supp.2d 615 (S.D.N.Y.1999) .........................................18

*Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ......................................23

*Dennis v. Sparks*, 449 U.S. 24 (1980)..............................................................17

*District of Columbia v. Heller*, 554 U.S. 570, 581 (2008) ................................10

*Esmail* v. *Macrane*, 53 F. 3d 176, 180 (CA7 1995)....................................16, 17

*Evans v. City of New York*, 308 F. Supp. 2d 316, 323 (S.D.N.Y. 2004) ..............12

*Falls Riverway Realty v. City of Niagara Falls*, 754 F.2d 49, 53 (2d Cir.1985) .....8

*First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles, California*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) .................20

*Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005)...........................19

*Foman v. Davis*, 371 U.S. 178, 182 (1962) .....................................................23

*Friedman v. N.Y. City Admin. for Children's Servs.*, No. 04-CV-3077(ERK), 2005 WL 2436219, at *7 (E.D.N.Y. Sept. 30, 2005) ............................................... 17

*Fuentes v. Shevin*, 407 U. S. 67, 80–81 (1972) .................................................. 21

*Gallagher v. US*, No. 11-cr-0806 (BMC) (E.D.N.Y. June 26, 2018) ............. 13

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith*, 756 F.2d 230, 236–37 (2d Cir.1985) ......................................................................... 1

*Gill v. Silver Inv'rs Inc.*, No. 16 CV 3219 (LDH), 2016 WL 4099098, at *3 (E.D.N.Y. Aug. 2, 2016) ........................................................................ 19

*Goldberg v. Kelly*, 397 U. S. 254 (1970) ........................................................ 12

*Gregory v.Chicago*, 394 U. S. 111, 112 (1969) ............................................... 20

*Hague v. Sedita*, 56 Misc.2d 203, 288 N.Y.S.2d 212 ....................................... 12

*Herman & MacLean v. Huddleston*, 459 U.S. 375, 389 (1983) .......................... 12

*In re Bristol Industries*, 690 F.2d 26, 28-29 (2d Cir.1982) ................................. 9

*In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir.1985) ................................. 9

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) ....................... 8

*In the matter of the complaint of Wittich Bros. Marine, Inc.*, No. CV 15-5210 (E.D.N.Y. Jan. 9, 2018) ........................................................................ 8

*Irish Lesbian and Gay Organization v. Giuliani*, 143 F.3d 638 (2d Cir. 1998) ...... 8

*Kassner v. 2nd Ave. Delicatessen. Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) ............ 8

*Kent v. United States*, 383 U. S. 541, 562 (1966) .............................................. 20

*Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191 (2d Cir. 1994) ..................................................... 21

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941-42 (1982) .............................. 17

*Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ......... 12

*Matter of Gulotta v. Kelly*, 8 Misc.2d 721, 168 N.Y.S.2d 60 (1957) ................... 12

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ............ 23

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) .................................... 10, 11

*McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) ....................... 18

*Middleton v. The City of New York*, 2006 WL 1720400 (E.D.N.Y.) ................... 19

*Monroe v. Pape*, 365 U.S. 167 (1961) ....................................................... 17

*Moorish Science Temple of Am., Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir.1982) . 23

*Napolitano v. Ryder*, 18-cv-03607(SJF)(AKT) ........................................ 12

*New York State Rifle & Pistol Association, Inc. v. City of New York*, No. 18-280 (U.S. Apr. 27, 2020) ........................................................................... 10, 13

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) .............................. 19

*Patel* v. *Contemporary Classics,* 259 F.3d 123, 126 (2d Cir. 2001) ................... 8

*Pearson* v. *Callahan*, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) .......................... 22

*Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922) ............................................................................................................. 20

*Perry v. Sindermann*, 408 U. S. 593, 601 (1972) ...................................... 12

*Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) ..................................... 18

*Rounseville v. Zahl*, 13 F. 3d 625, 632 (2d Cir. 1994) ................................. 19

*Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988) .................................. 23

*Saucier* v. *Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ........... 22

*Schenk v. ProChoice Network of W. N.Y.*, 519 U.S. 357, 372 (1997) ............... 12

*Schiff v. Suffolk Cty. Police Dep't*, No. 12-cv-1410, 2015 WL 1774704, at *5 (E.D.N.Y. Apr. 20, 2015) ................................................................... 10, 19

*Schmerber* v. *California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966) ................................................................................................... 21

*Screws v. United States*, 325 U.S. 91, 107—111 (1945) .............................. 17

*Silvester v. Becerra*, 138 S. Ct. 945, 952 (2018) ....................................... 11

*Spear* v. *Town of West Hartford*, 954 F.2d 63 (2d Cir.1992) ......................... 13

*Stack* v. *Boyle,* 342 U. S. 1, 4–5 (1951) ................................................ 20

*Thompson* v. *Louisville,* 362 U. S. 199, 206 (1960) .................................... 20

*Timbs v. Indiana*, 586 US _, No. 17–1091 (2019) ................................... 14

*Town of Orangetown* v. *Magee*, 88 N.Y.2d 41, 49, 643 N.Y.S.2d 21, 665 N .E.2d 1061 (1996) ......................................................................................... 20

*Trombley* v. *O'Neill*, 929 F. Supp. 2d 81 (N.D.N.Y. 2013) .......................... 14

*Troni* v. *Holder*, No. 09 Civ. 10239, 2010 U.S. Dist. LEXIS 79670, at *4–5 (S.D.N.Y. July 29, 2010).................................................................................8

*Turner Broad. Sys. v. FCC*, 520 U.S. 180, 213–14 (1997) ................................11

*United States v. Classic*, 313 U.S. 299, 326 (1941)..........................................17

*United States v. Lester*, 363 F.2d 68, 72 (8th Cir. 1966).................................18

*United States v. Margiotta*, 688 F.2d 108, 131 (2d Cir. 1982) ..........................18

*United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir.1992)...............................19

*United States v. Price*, 383 U.S. 787, 794 (1966)..............................................17

*United States v. Rivera*, 971 F.2d 876, 890 (2d Cir.1992) ................................19

*United States v. Virginia,* 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996)................................................................................................11, 13

*Village of Willowbrook* v. *Olech*, 528 US 562 (2000).......................................16

*Villante* v. *Dept. of Corrections of City of New York*, 786 F.2d 516 (2d Cir. 1986)1, 9

*Weinstein v. Krumpter*, No. 2: 14-cv-7210 (ADS)(AKT) (E.D.N.Y. July 8, 2019) ...............................................................................................................12

*Williams v. United States*, 341 U.S. 97, 99—100 (1951) ..................................17

*Wilson* v. *Layne*, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) ...........21

## STATUTES

18 U.S.C. § 1951.................................................................................................17

42 U.S.C. § 1983.................................................................................................19

42 U.S.C. § 1985.........................................................................................13, 14

Fed.R.Civ.P. 12(b)(6) .........................................................................................8

Fed.R.Civ.P. 12(c).............................................................................................8

Fed.R.Civ.P. 15.................................................................................................23

Fed.R.Civ.P. 56.................................................................................................8

# MEMORANDUM OF LAW OPPOSING DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

Your Honor Ordered the return of Plaintiffs weapons, former law enforcement, who are proceeding in this lawsuit because their Second Amendment rights were stripped, without due process and in an effort to harm, silence and retaliate against Plaintiffs, by the Suffolk County Defendants who conspired with, *inter alia,* their codefendants and did each act or create policy that caused Plaintiffs harm: COUNTY OF SUFFOLK, SUFFOLK COUNTY EXECUTIVE, STEVEN BELLONE, SUFFOLK COUNTY POLICE COMMISSIONER GERALDINE HART, SUFFOLK COUNTY PISTOL LICENSING BUREAU EXECUTIVE OFFICER SGT. WILLIAM WALSH, SUFFOLK COUNTY COMMANDING OFFICER OF THE PISTOL LICENSING BUREAU LIEUTENANT MICHAEL KOMOROWSKI, PISTOL LICENSING BUREAU POLICE OFFICER MARC SFORZA (hereinafter "Defendants").This motion to dismiss is made after Suffolk County Attorney Arlene Zwilling ("Zwilling") refused to proceed with depositions due to her requiring in-person communication with Defendants.

Defendants furnished this court with a complete denial to Plaintiffs complaint, allegations, sworn testimony and exhibits. See D.E. 27 ¶ 4. Defendants refuse to provide reasonable discovery and have prolonged the release of the Internal Affairs Unit report/its attachments in this litigation. What Defendants produced shows the involvement of the above Defendants, directly if not in creating such policies, that seek to deprive persons of their constitutional rights. Defendants worked with codefendants to deprive Jennifer Nin of her service weapon for something she said and, albeit not involved with any of the false allegations against Ms. Nin, Dianne Tritschler simply by the extension that Ms. Tritschler is related to Ms. Nin. There is a taking involving weapons together with due process violations offered in Plaintiff's first complaint.

Your Honor encouraged settlement while Defendants prolong litigation. See *Villante* v. *Dept. of Corrections of City of New York*, 786 F.2d 516 (2d Cir. 1986). This is because Ms. Zwilling knows that "plaintiff's claim could only succeed upon a showing of actual or constructive knowledge on the part of supervisory personnel and where facts solely in the defendants' control were therefore at the heart of the necessary proof, the district court's failure to order compliance with the plaintiff's request for deposition discovery was an especially crippling blow," which must preclude granting Defendants' motion to dismiss here. *Id.* (citing *Gary Plastic Packaging Corp.* v. *Merrill Lynch, Pierce, Fenner & Smith*, 756 F.2d 230, 236–37 (2d Cir.1985)).

### PROCEDURAL LITIGATION HISTORY

This matter was filed on March 22, 2019. The first Conference was held beforeyou're your Honor, the Honorable Sandra J. Feuerstein on April 24, 2019. Plaintiffs are former law enforcement. The undersigned counsel sought to have plaintiff Jennifer Nin's pistol permit reinstated and have her regain her employment as a Peace Officer with MacArthur Airport.

Thereafter, this matter was referred to the USMJ Kathleen A. Tomlinson for discovery. The first conference was held on October 11, 2019 and the initial completion of fact discovery was set by Your Honor as January 13, 2020. Your affiant sought depositions of the eleven defendants from the outset. Plaintiff had served defendants Demands for Discovery and Notice to take Depositions first and immediately sought such discovery to proceed to depositions.

Plaintiff detailed discovery problems in his May 11, 2020 letter submission to this Court by for which Defendants articulate nonsensical reasons for why these depositions cannot proceed electronically and in a timely and orderly fashion without the undersigned having to negotiate two lawyers and a dozen personalities through a legitimate court reporting service.

At the conference before USMJ Tomlinson Court Ordered a date for Plaintiffs' depositions of February 25, 2020. Both Plaintiffs were present but only Jennifer Nin was deposed albeit Ms. Tritschler was present – the defense attorneys declined to depose her. No Defendants were provided for depositions and no dates were provided from the Defendants as to when their clients would be deposed. All Defendants refuse to produce themselves for deposition and Arlene Zwilling moved for judgment on the pleadings on or about April 29, 2020.

### STATEMENT OF FACTS

The facts of the case as alleged in the Complaint are that on or about October 29, 2018 Plaintiff Jennifer Nin filed a grievance which complained about Officer Robert Finn taking family leave whenever it pleased him thereby forcing the other officers to work his shifts and overtime. Ms. Nin's grievance is annexed to the Complaint as Exhibit "A".

Defendant Chief Kevin Burke ("Burke"), was newly appointed to take over the airport security at MacArthur Airport. Burke had instituted new rules which required any complaints to be formally filed as a work grievance. That a text message was allegedly sent by Officer Finn sent from an email address "BFINN503@GMAIL.COM" (Which are Officer Robert Finn's initials and shield number) to fellow Sergeant Anthony Passalacqua's wife alleging that plaintiff

Jennifer Nin and Sergeant Anthony Passalacqua were having an affair. A copy of the email text message is annexed to the original Complaint as Exhibit "B". It should be noted that Officer Robert Finn vehemently denied that this was his email address and denied ever sending such a text to Sergeant Passalacqua's wife.

On or about October 30, 2018, Ms. Nin called fellow Officer Robert Finn at work and demanded to know why he was doing this to Anthony to which Officer Finn hung up the phone.

On or about October 30, 2018, Ms. Nin confronted Officer Robert Finn during the shift change at work at approximately 1600 hrs and stated that if anything happens because of that text message you will not need FMLA because "you will be a stay at home dad". This conversation was witnessed by Sgt. Craig Hatcher of the Islip Airport Law Enforcement Division.

That evening during his 4x12 shift Officer Robert Finn complained to Chief Kevin Burke about plaintiff Jennifer Nin. Chief Burke advised Officer Finn to file a complaint with the Suffolk County Police Department Airport Operations Officers on duty.

Upon information and belief Suffolk County Police Officers Steven Donahue and Kevin Henry responded and took a police information field report which indicated no criminal conduct.

Burke, a recently retired Suffolk County Police Lieutenant, contacted the 5th Precinct Crime Section seeking to have the initial report upgraded to an aggravated harassment criminal complaint. Burke sought and received cooperation from the other Defendants seeking dismissal. Further, based upon this action, the Suffolk County Pistol Section was contacted and immediately suspended Ms. Nin's pistol license without any modicum of due process. This deprivation was excessive and were designed and did succeed in leading to her termination.

On or about October 31, 2018, Jennifer Nin reported for duty at 0800 where she was later approached by Chief Kevin Burke who asked the Ms. Nin to follow him into his office. As the plaintiff approached Chief Burke's office two uniformed Suffolk County Police Officers, Sgt. Timothy Burns and P.O. Eric Diprima, accompanied them into the office at which time Jennifer Nin was ordered to surrender her firearms and report back to the duty desk unarmed.

Plaintiffs were deprived of their weapons at this point, at approximately 12:00 noon that day, Chief Burke and the same two uniformed Suffolk County Police Officers approached plaintiff Jennifer Nin and ordered her to report home to surrender her other weapons.

Upon arriving at the Plaintiffs' home located in the 7th Precinct of Suffolk County in Middle Island, N.Y. with the two uniformed officers they entered the plaintiff's home and retrieved Ms. Nin's other firearms and her actual pistol license.

Defendants cannot contest that there was a constitutional deprivation of property (5th Amendment) and weapons (2nd Amendment) without due process and separate from other similarly situated persons (14th Amendment) because, while at the home where both Plaintiffs reside, Sgt. Timothy Burns and P.O. Eric Diprima, informed Plaintiff Dianne Tritschler that they needed to take her weapons and pistol license as well.

Plaintiff Dianne Tritschler, a retired peace officer, asked why she was informed that it was because she resided with her daughter Jennifer Nin that they were ordered to take her weapons and license as well. Plaintiff Tritschler was essentially guilty by association, suffering violations of her constitutional rights but, as law enforcement, Plaintiffs cooperated with the police officers' instructions knowing that their redress would be a subsequent challenge to such illegal and unconstitutional actions.

On November 1, 2018 Plaintiff Jennifer Nin reported to work at MacArthur Airport at 8:00 a.m. At 8:30 a.m. plaintiff left the airport to report to Town Hall as per the demand of Burke who cooperated with, among others, Suffolk County Defendants in an effort to permanently deprive Plaintiffs of their property, under color of state law, together by using the policies and procedures developed by Defendant BELLONE and Defendant HART and enforced by the remaining Defendants .

Upon arriving, Ms. Nin was advised by her Union Officials that the Personnel Director of the Town of Islip wanted to investigate what occurred from all sides involved. Union Release Agent Frank Correira and Union Vice President Patrick DeFelice spoke with Ms. Nin to hear her account of the incident.

Officer Robert Finn and Sgt. Craig Hatcher went into the Director's office with the union officials first. They informed the Director of Personnel their accounts of the incident. Plaintiff Nin was then called in to give her account and she was advised by Union Release Agent Frank Correira and Union Vice President Patrick DeFelice that both Officer Finn's account and Sgt. Craig Hatcher's account matched exactly with Plaintiff Nin's account.

Plaintiff entered the room with the union representatives and found Arthur Abbate and Chief Kevin Burke sitting in the conference room. She gave her account. All parties agreed that no physical threat was ever made. The violations could have resolved here but Defendants, together with the Islip codefendants, did pursue these false charges to further injure Plaintiffs.

Then Arthur Abbate excused himself to confer with Chief Burke in his private officer. Upon their return the plaintiff was advised that she was being placed on administrative leave and needed to report for a fitness evaluation. When questioned about the need for a fitness for duty evaluation since all parties agreed that no physical threat was made, Arthur Abbate informed the plaintiff that he needed to cover all bases on the advice of Chief Burke.

Plaintiff was asked to sign a referral form for a fitness for duty evaluation to National Employee Assistance Program ("EAP"). Plaintiff declined to sign the form as written because it stated that she threatened another officer. She was advised that she would be terminated if she did not sign the form pursuant to an Article 75 Hearing. Upon Plaintiff Nin's insistence, the form was altered to reflect "alleged to have threatened another officer". After the hearing the Plaintiff Nin drove to the airport to retrieve her personal property. She then received a text from Chief Burke ordering her to stay away from the airport until the matter was resolved.

That a fitness for duty evaluation was never previously sough for any Peace Officer employed by the Town of Islip Airport Law Enforcement Division and had been sought solely at defendant, Chief Kevin Burke's directive. Chief Burke worked with the Defendants that seek dismissal in a conspiracy to deprive Plaintiffs, both of them, of their constitutional rights.

On November 2, 2018, Plaintiff Nin went to the EAP office and was advised that they could not perform the evaluation as it required a psychiatric evaluation and needed to be performed by either a psychiatrist or a psychologist. The EAP referred Ms. Nin to one Ben Accomando, Phd.

On November 9, 2018 Ms. Nin reported to Ben Accomando's office located at 2563 Eileen Road, Oceanside, N.Y., 11572 where she was asked to sign consent forms and then sat with Dr. Accomando for approximately 50 minutes discussing the events. Dr. Accomando would ask brief questions while plaintiff recounted the incidents. Ms. Nin was asked to take a psychological examination comprised of approximately 250 statements which required a response of agree with or disagree with each statements. This took approximately 35 minutes for Ms. Nin to carefully read each statement and properly answer.

On or about November 7, 2018 Plaintiffs received a letter dated November 1, 2018 from the Suffolk County Pistol License Section which advised that her pistol license was suspended from the incident which occurred on October 30, 2018 pending further investigation. These actions evidence, not denounce, involvement of Defendants. This letter, incorporated in the pleadings, directed the recipient to respond with a written statement regarding the incident. The letter was signed by defendant, William Walsh. Further, the letter directed the plaintiffs to contact P.O. Marc Sforza if they wished to inquire about the suspension. A copy of said letter is annexed to the Complaint as Exhibit "C" and "D".

O November 7, 2018 Defendant Marc Sforza stated that Suffolk County Police Department ("SCPD") conducts their own investigations and that both plaintiffs must respond with an explanation of the incidents which caused the seizure of their weapons and suspension of their Suffolk County Police Department Pistol License. Copies of Plaintiffs responses are annexed to the Complaint as Exhibit "E" and "F". Defendant Sforza acts pursuant to policy and procedure promulgated by Defendants BELLONE and HART, both of whom are involved in the actions and omissions that were taken under their care and supervision to deprive Plaintiffs of their constitutional rights.

On or about November 14, 2018 Ms. Nin was advised by her union that she must appear at Islip Town Hall Personnel Department, bringing all airport property, keys and credentials to the meeting. to meet with Director of Personnel Arthur Abbate on November 16, 2018 at 10:00 a.m.

On November 16, 2018, Ms. Nin reported as ordered to the Director of Personnel's office. Plaintiff met with Union President Kevin Boyle, Vice President Patrick DeFelice and Release Agent Frank Correira. Ms. Nin was advised that the town was threatening to terminate her since her pistol license was suspended since it is a condition of employment. Further the union was supporting her since she did nothing wrong. Upon meeting with Personnel Director Arthur Abbate, Ms. Nin was terminated and advised to surrender all town property and credentials. Thereafter, the union put in a grievance which led to pending arbitration. Said grievance was denied.

On or about November 19, 2018 Plaintiff Jennifer Nin received a copy of the Fitness for Duty Evaluation from Ben Accomando. Said report was replete with the statements, comments and opinions of defendant, Chief Kevin Burke alleging many derogatory comments, these being from Chief Kevin Burke who had known plaintiff Jennifer Nin for approximately 3 weeks. Plaintiff

Jennifer Nin has been an employee for 13 years with an unblemished work record. A copy of said Fitness for Duty Evaluation was annexed to the Complaint as Exhibit "G".

Unknown to the Plaintiff at the commencement and initial proceedings of this lawsuit, on November 24, 2018 the matter was officially closed by the Suffolk County Police Department as the alleged complainant Robert Finn did not wish to proceed with the matter. This information was withheld from Plaintiffs and this Court. See the Suffolk County Police Department records and report closing this matter on November 24, 2018.

This fact, that just a mere 16 days after the plaintiff Jennifer Nin's termination the alleged criminal matter was closed, was carefully omitted from the Courts Notwithstanding, the Suffolk County Police Department, Defendants working together, with Islip defendants herein refused to give either the Plaintiffs back their weapons when this proceeding was commenced.

Your Honor Ordered the weapons returned. Notwithstanding the action being brought, Defendants continued to deny Plaintiffs the return of their weapons or pistol licenses until ordered by this Honorable Court to do so. That was only after a great cost as this Court had to appoint a psychiatrist to conduct an honest evaluation as opposed to the PSYBAR Group which boasts on their website that they represent employers attempting to solve problem employees

This Court was deceived as the entire time that Arlene Zwilling was appearing before this court she knew or should have known that the charges pending against Plaintiff Jennifer Nin had been closed 16 days after she was terminated. Now the same attorney refuses to allow the depositions to proceed albeit the undersigned has endeavored through every obstacle, jumped through every hoop and made every accommodation for which Defendants refuse to produce themselves for depositions – something prolonging the resolution of this case.

### THE STANDARD OF REVIEW

This Honorable Court is familiar with the standards of review on motions to dismiss a complaint under Rule 12(b) and Rule 12(c) of the *Federal Rules of Civil Procedure* and Plaintiffs submit that if Defendants seek dispositive motion practice Your Honor can Order the depositions of Defendants and convert this motion to one for Summary Judgment, thus moving towards disposition as opposed to Defendants' perpetual delay of discovery, depositions and resolve of this matter.

When evaluating a motion for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the court employs the same standard as that for a motion to dismiss under Rule 12(b)(6). See *Troni* v. *Holder*, No. 09 Civ. 10239, 2010 U.S. Dist. LEXIS 79670, at *4-5 (S.D.N.Y. July 29, 2010) (citing *Patel* v. *Contemporary Classics,* 259 F.3d 123, 126 (2d Cir. 2001)); *Astrazeneca AB* v. *Apotex Corp.*, No. 01 Civ. 9351, 2010 U.S. Dist. LEXIS 58044, at *9 (S.D.N.Y. June 8, 2010) (citing *Irish Lesbian and Gay Organization v. Giuliani*, 143 F.3d 638 (2d Cir. 1998)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft* v. *Iqbal*, 556 U.S. 662,668 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when the "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 668 (citing T*wombly*, 550 U.S. at 556).

As a general rule, the court is required to accept as true all of the allegations contained in the complaint, see *Iqbal*, 556 U.S. at 678; *Kassner* v. *2nd Ave. Delicatessen. Inc.*, 496 F.3d 229, 237 (2d Cir. 2007), and to "draw[] all reasonable inferences in the plaintiffs favor." *Troni*, 2010 U.S. Dist. LEXIS 79670, at *5 (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)). Although the court is generally limited to the facts alleged in the complaint when determining a Rule 12(c) motion, the court may also refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Brass* v. *Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted); see Young Decl. and D.E. 1, D.E. 2-7 (noting exhibits and sworn testimony).

Under Fed.R.Civ.P. 12(c), the court may consider, "in its discretion and upon notice to all parties," materials outside the pleadings. *Falls Riverway Realty v. City of Niagara Falls*, 754 F.2d 49, 53 (2d Cir.1985). If it does so, however, the motion is treated as one for summary judgment under Fed.R.Civ.P. 56. *Id.* at 53-54. *In the matter of the complaint of Wittich Bros. Marine, Inc.*, No. CV 15-5210 (E.D.N.Y. Jan. 9, 2018) (J. Wexler).

"Where the motion to dismiss involves a civil rights complaint, we must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Hall* v. *Burney*, No. 11-6566 (4th Cir. Nov. 18,

2011) (citation and internal quotation mark omitted). The incorporation of sworn testimony adduced from Plaintiffs should be coupled with the deposition testimony of Defendants (upon Defendants production) in what would be a simple conversion process of this dispositive motion:

> Taken together, Federal Rules of Civil Procedure 12(c) and 56(c) require that if a district court considers matters outside of the pleadings, it must then treat a motion for judgment on the pleadings as one for summary judgment and ensure that the opposing party is given at least ten days notice of the conversion. *See Beacon Enterprises* v. *Menzies*, 715 F.2d 757, 767 (2d Cir.1983); *In re Bristol Industries*, 690 F.2d 26, 28-29 (2d Cir.1982). The essential inquiry when such a conversion is challenged, however, is not whether formal notice was served, but whether, based on the facts and circumstances of the particular case, the opposing party "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *In re G. & A. Books, Inc.,* 770 F.2d 288, 295 (2d Cir. 1985).

*Villante* v. *Dept. of Corrections of City of New York,* 786 F.2d 516 (2d Cir. 1986) (external quotation marks omitted and internal citations preserved).

Plaintiffs submit that the pleadings, affidavits submitted in support, Plaintiffs' guns already returned, and the documentary evidence attached as exhibits and more thoroughly described in the declaration of Richard Young, Esq., must result in the denial of Defendants request for relief together with all other relief that this Honorable Court deems just and proper.

I.   **YOUR HONOR ORDERED DEFENDANTS TO RETURN PLAINTIFFS' WEAPONS, A SECOND AMENDMENT VIOLATION WAS RECOGNIZED, AND DEFENDANTS CANNOT MEET THEIR BURDEN IN SEEKING DISMISSAL ON THE PLEADINGS PROVIDED THE FACTS, POLICIES AND PRACTICES WITHIN THE DEFENDANT COUNTY OF SUFFOLK AND THE SUPERVISORY DEFENDANTS**

Your Honor Ordered Plaintiffs' guns returned based on these pleadings to which Defendants seek dismissal. Defendants statement that "Plaintiffs state no cognizable § 1983 Claim" is defies common sense as Your Honor managed to restore Plaintiffs to possession of their property (5th Amendment), firearms (2nd Amendment), necessary for Plaintiffs' vocation.

**Second Amendment**

Undoubtedly, the removal of property, weapons, directly by the Suffolk County Defendants, state actors, endorsed, approved and overseen by the Defendants supervisors is undoubtedly state action which deprived Plaintiff of her constitutional right to property and her vocation which, yes, required her to carry a service weapon. *Schiff v. Suffolk Cty. Police Dep't*, No. 12-cv-1410, 2015 WL 1774704, at *5 (E.D.N.Y. Apr. 20, 2015).

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second and Fourteenth Amendments create a right that "is exercised individually and belongs to all Americans." *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008). Law enforcement agents cannot be subject to the whim and caprice of a licensing officer.

Plaintiffs are not gun enthusiasts but, rather, are required to exercise their second amendment right as part of their chosen vocation, identity and continued service to state and county. Together with this property right, this "natural right of resistance and self preservation," 1 Sir William Blackstone, Commentaries on The Laws Of England 144 (1753), has been described as the "first law of nature" and "the true palladium of liberty." St. George Tucker, *View of The Constitution of The United States with Selected Writings* 238 (Clyde N. Wilson ed. 1999). Defendants cannot articulate how it is that policymakers are devoid of responsibility.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Court held that the Second Amendment right to keep and bear arms is a right held by private American citizens. *Id.* at 595. In *McDonald v. City of Chicago*, 561 U.S. 742 (2010) ("*McDonald*"), the Court held that the scope of that right applies to States and their political subdivisions, *id.* at 750, and that the contours of the right against the States are coextensive and coterminous with the contours a citizen can assert against the federal government, *id.* at 778–80. While limitations and reasonable restrictions are recognized, see, e.g., *New York State Rifle & Pistol Association, Inc. v. City of New York*, No. 18-280 (U.S. Apr. 27, 2020), the right is recognized and was violated here contrary to the assertions of Ms. Zwilling. Def. MOL P. 7.

In *McDonald*, this Court described the Second Amendment as a "'pre-existing right.'" *Id.* at 915. *Heller* too rejected the idea that the right "'is ... in any manner dependent on [the Bill of Rights] for its existence.'" *Heller* at 592. In *McDonald v. City of Chicago*, four justices adopted

the textual view that the Second Amendment applied to the states on the theory that it was incorporated into the Due Process Clause of the Fourteenth Amendment. However, Justice Thomas' concurrence presented a textualist position — that the Second Amendment is among the Privileges or Immunities guaranteed to Citizens against deprivation by States in the Fourteenth Amendment. See *McDonald* at 806 (Thomas, J., concurring).

The Second Amendment is not "subject to an entirely different body of rules than the other Bill of Rights guarantees that we have held to be incorporated into the Due Process Clause" *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010). Justice Thomas has observed that "[t]he right to keep and bear arms is apparently this Court's constitutional orphan. And the lower courts seem to have gotten the message." *Silvester v. Becerra*, 138 S. Ct. 945, 952 (2018) (Thomas, J., dissenting). Justice Thomas has charged that "the lower courts are resisting this Court's decisions in Heller and McDonald and are failing to protect the Second Amendment...." *Id*. at 950.

Together with the burden in seeking dismissal, Defendants have an exacting burden to justify the violations of Plaintiffs' Second Amendment rights – one by false association and the other guilty by association. See *United States v. Virginia*, 518 U.S. 515, 534 (1996). The Supreme Court applied intermediate scrutiny, emphasizing that this rigorous standard amounts to "skeptical scrutiny of official action," and requires that the government "must demonstrate an exceedingly persuasive justification." *Id*. at 531 (internal quotation marks omitted). When intermediate scrutiny is at bar, there is a "strong presumption" that the State's action is unconstitutional. *Id*. at 532. "The burden of justification is demanding and rests entirely on the State." *Id*. at 533. "The justification must be genuine, not hypothesized or invented ad hoc in response to litigation." *Id*. The State's argument also "must not rely on overbroad generalizations." *Id*. Although not as demanding as strict scrutiny, satisfying intermediate scrutiny is a daunting challenge for the government.

"Under intermediate scrutiny, the Government may employ the means of its choosing so long as the . . . regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation, and does not burden substantially more speech than is necessary to further that interest." *Turner Broad. Sys. v. FCC*, 520 U.S. 180, 213–14 (1997) (internal quotation marks omitted) (emphasis added) (ellipsis in original).

The Supreme Court has stated, "We have required proof by clear and convincing evidence where particularly important individual interests or rights are at stake," *Herman &*

*MacLean v. Huddleston*, 459 U.S. 375, 389 (1983) and while "ensuring public safety and order" meets the intermediate-scrutiny standard, *Schenk v. ProChoice Network of W. N.Y.*, 519 U.S. 357, 372 (1997), one cannot help but see the obvious problem when the service weapon of law enforcement is removed, from Ms. Nin nevertheless the removal of weapons from Ms. Tritschler for what there is no excuse but for which there exists a policy, a pattern and practice, of deprivation of Second Amendment and Fifth Amendment rights.

The State can impose conditions on this right for the protection of the public, however they cannot deprive Plaintiffs of their rights without due process, even if temporary. *Hague v. Sedita*, 56 Misc.2d 203, 288 N.Y.S.2d 212 (citing *Matter of Gulotta v. Kelly*, 8 Misc.2d 721, 168 N.Y.S.2d 60 (1957)). Plaintiffs' ability to hold a weapon was directly tied to her ability to maintain employment. *Bell v Burson*, 402 U.S. 535, 539 (1971); see *Evans v. City of New York*, 308 F. Supp. 2d 316, 323 (S.D.N.Y. 2004) (noting, once granted, such license is a protected property interest, and the Due Process Clause thus applies to the deprivation of a driver's license by the State.") (citing *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) ("Suspension of issued licenses ... involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment."). Defendants suggestion that gun ownership and the right to maintain such a vocation that requires gun ownership required for a vocation can be cancelled at any time defies logic and cannot be consistent with federal law. See Def. MOL P. 8; cf. *Weinstein v. Krumpter*, No. 2: 14-cv-7210 (ADS)(AKT) (E.D.N.Y. July 8, 2019) (deprivation of handgun not tied to vocation or law enforcement).

As with any other liberty interest, there must be some modicum of due process prior to its removal. *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); *Perry v. Sindermann*, 408 U. S. 593, 601 (1972); see *Board of Regents v. Roth*, 408 U. S. 564 (1972); *Bell v. Burson*, 402 U. S. 535, 539 (1971); *Goldberg v. Kelly*, 397 U. S. 254 (1970). Your Honor recognized this (see also *Napolitano v. Ryder*, 18-cv-03607(SJF)(AKT)) in her previous Order.

Plaintiffs guns were retuned to them and in the context of Second Amendment Rights, three dissenting Supreme Court Justices, dissenting, opined that:

> If a §1983 plaintiff achieves *any success on the merits,* even an award of nominal damages, the plaintiff is a prevailing party and is eligible for attorney's fees under 42 U. S. C. §1988.

See *Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept. of Health and Human Resources,* 532 U. S. 598, 603 (2001). For this reason, were the Court to exercise jurisdiction in this case and rule for petitioners, they would be eligible for attorney's fees. See *Farrar* v. *Hobby,* 506 U. S. 103, 109 (1992).

*New York State Rifle & Pistol Association, Inc.* v. *City of New York*, No. 18-280 (U.S. Apr. 27, 2020) (J. Alito dissenting). Not only does such a claim survive but "[t]he burden of justification is demanding and it rests entirely on the State." *United States v. Virginia,* 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). As extensively discussed above and evidenced in the pleadings, exhibits annexed thereto, and what will obviously resolve throughout discovery, summary judgment or trial, the involvement of each Defendant is borne throughout the conspiracy that deprived both Plaintiffs of property without due process by state actors.

**1st Amendment**

Plaintiffs constitutional rights were violated by First Amendment retaliation, takings and due process violations by state actors acting under color of State law. *Ciambriello* v. *Cty. of Nassau,* 292 F.3d 307, 323 (2d Cir. 2002) (citing *Spear* v. *Town of West Hartford*, 954 F.2d 63, 68 (2d Cir.1992)). Plaintiff is allowed to speak out against harassment and other criminal conduct taken against civilians, here her friend and colleague, for which Plaintiffs suffered injury in, among other things, the loss of property, vocation, ability to earn an income and maintain familial relationships simply because she spoke out against wrongdoing.

Defense counsel ignores this "[i]n trying to come up with some defense against the awful facts, defense counsel, of necessity, pushed...right to the edge of the straight-face test," *Gallagher* v. *US,* No. 11-cr-0806 (BMC) (E.D.N.Y. June 26, 2018), and basically implies that there was absolutely wrongdoing by Defendants, any of them, whatsoever.

Defendants, collectively, worked together to deprive Plaintiffs of their constitutional rights through their various positions throughout Suffolk County in and in failing to address the constitutional violations to which Plaintiffs suffered and complained. Counsel for Defendants ignores the subtle but meaningful substantive distinctions between the allegations of conspiracy required to establish a claim under 42 U.S.C. §1983 and 42 U.S.C. §1985 and §1985(3)

> "(To) state a §1983 conspiracy claim, (a) plaintiff must allege:
> (1) an agreement between two or more state actors or between a

> state actor and a private entity; (2) to act in concert to inflict an
> unconstitutional injury; and (3) an overt act done in furtherance
> of that goal causing damages. A §1983 conspiracy claim must be
> based on an underlying violation of one or more constitutional
> rights."

*Biswas* v. *City of New York*, 973 F. Supp. 2d 504, 533 (S.D.N.Y. 2013), (J.

Koeltl)("*Biswas*") (internal quotation marks and citations omitted). To state a conspiracy

claim under § 1985(3), a plaintiff must allege:

> "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly,
> any person or class of persons of equal protection of the laws; (3) an act in
> furtherance of the conspiracy; (4) whereby a person is deprived of any right of
> a citizen of the United States."

*Biswas*, at 533 (internal quotation marks, citations, and ellipsis omitted). Plaintiffs

accomplish this in their pleadings, exhibits and sworn statements in support. Plaintiffs have

provided the facts supporting a clear meeting of the minds among Defendants creating an

agreement, express or tacit, to promote, further, and facilitate long standing unconstitutional

policies. See Richard Young Declaration; see *Trombley* v. *O'Neill*, 929 F. Supp. 2d 81, 97

(N.D.N.Y. 2013) (J. Suddaby).

## 8th Amendment

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines

imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

In June, 2019, the U.S. Supreme Court in a unanimous ruling, held that the Eighth

Amendment's prohibition against "excessive fines" applies to the states under the Due Process

clause of the Fourteenth Amendment. *Timbs* v. *Indiana*, 586 US _, No. 17–1091 (2019)

("*Timbs*"). In the wake of *Timbs*, challenges have been mounted from things like overzealous

ticketing to the loss, here, of a profession and vocation. See, e.g., J. Justin Wilson, *Doraville*

*Homeowners Win Round One in Lawsuit Challenging City's Overzealous Ticketing Scheme*,

Institute for Justice (April 1, 2019), *available at* bit.ly/2WEeADu. Perhaps Defendants are able

to unilaterally strip Nin of her ability to carry a firearm but not of her ability to be a peace

officer.

Writing for a unanimous Court in *Timbs*, Justice Ruth Bader Ginsburg observed that this

protection has been "a constant shield throughout Anglo-American history" highlighting the

influence of the oppressive fines imposed under the Black Codes on the adoption of the Fourteenth Amendment.  In separate concurring opinions, Justices Neil Gorsuch and Clarence Thomas argued that the ban on excessive fines should be incorporated through the privileges or immunities clause, which states, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." The distinction is that the privileges or immunities clause is specific to United States citizens; not "any person," as in the due process clause of the Fourteenth Amendment.

"Exorbitant tolls undermine other constitutional liberties," R.B. Ginsburg wrote. "Excessive fines can be used, for example, to retaliate against or chill the speech of political enemies." She added, "Even absent a political motive, fines may be employed 'in a measure out of accord with the penal goals of retribution and deterrence,' for 'fines are a source of revenue,' while other forms of punishment 'cost a State money.' " See 586 US __, No. 17–1091 (2019). Whether it is over tall grass or a treehouse, the prophetic examples provided by R.B. Ginsburg squarely fall within the Defendants' demand to divest Plaintiffs of property, license and that Plaintiff Nin should have been divested of her means of employment by such excessive and unreasonable punishment. See J. Justin Wilson, *Florida Man Could Lose His Home for Having Long Grass*, Institute for Justice (May 8, 2019), *available at* bit.ly/2WCQXLB.

Defendants ignore Supreme Court precedent while endorsing recent decisions concerning handgun licensing as"The touchstone of the constitutional inquiry under the Excessive Fines Clause," moreover, "is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *United States* v. *Bajakajian,* 524 U.S. 321, 334 (1998). "If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *United States* v. *Bajakajian*, 524 U.S. 321, 336–337 (1998)

As Justice Ginsburg noted, excessive tolls and forfeiture form the basis of government tyranny over local law enforcement. The forfeiture and fine(s) suffered here are enormous: the stripping of a law enforcement officer of her weapon and job within moments. The pleadings make this clear and are not in regards to "convicted prisoners" (Def. MOL P. 13) albeit Plaintiffs were treated as such, humiliated and suffered the indignancy of being treated as criminals although Defendants, all of them, worked together to bolster and continue false charges as best

evidenced by the dismissal of the matter which defense counsel carefully hid in her back pocket as she defended this case before Your Honor.

II.   **PLAINTIFF NIN WAS TARGETED FOR A SINGLE STATEMENT, DEPRIVED OF HER FIREARMS AND SUBJECT TO CONSPIRACY DUE TO A "SPITEFUL EFFORT" TO HURT PLAINTIFFS, ONE OF WHICH HAD HER WEAPONS SEIZED FOR NO APPARENT REASON OTHER THAN HER RELATIONSHIP TO MS. NIN**

This Honorable Court readily divined from the pleadings that there was no basis to hold the weapons of Plaintiffs and punish the Plaintiffs as discussed above for which Defendants cannot possibly satisfy their burden that Plaintiffs have not sufficient pled and articulated the conspiracy that targeted Plaintiff Nin for summary punishment, deprivation of her property and constitutional rights, inclusive of the Fourteenth Amendment.

*Village of Willowbrook* v. *Olech*, 528 US 562 (2000) came to the Supreme Court from the Court of Appeals for the Seventh Circuit which held that a plaintiff can allege an equal protection violation by asserting that state action was motivated solely by a "spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." 160 F. 3d 386, 387 (1998) quoting *Esmail* v. *Macrane*, 53 F. 3d 176, 180 (CA7 1995) ). … The Supreme Court granted certiorari to determine whether the Equal Protection Clause gives rise to a cause of action on behalf of a "class of one" where the plaintiff did not allege membership in a class or group. 527 U.S. 1067 (1999) and stated,

> "Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. [citations omitted] In so doing, we have explained that '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.' [citations omitted] That reasoning is applicable to this case. The complaint also alleged that the Village's demand was "irrational and wholly arbitrary" … These allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis."

This case is one where "a powerful public official picked on a person out of sheer vindictiveness" *Macrane*, 53 F. 3d at 180, evidenced by Burke's attack and his continued pressure on the Suffolk County Defendants, from the bottom up, to continue to maintain a false charge against Plaintiff Nin and withhold her weapons in an effort to have her removed from her ability to be a law enforcement officer.

The involvement of all of the named Defendants is evidenced not only in the pleadings but in the exhibits annexed and made part of the pleadings, set forth more fully in the accompanying declaration, complaint and its attendant affidavits and exhibits.

The involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of civil rights, whether or not the actions of the police were officially authorized, or lawful. *Monroe v. Pape*, 365 U.S. 167 (1961); see *United States v. Classic*, 313 U.S. 299, 326 (1941); *Screws v. United States*, 325 U.S. 91, 107—111 (1945); *Williams v. United States*, 341 U.S. 97, 99—100 (1951). To act 'under color' of law does not require that the accused even be an officer of the State. It is enough that he or she is a willful participant in joint activity with the State or its agents. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970) (citing *United States v. Price*, 383 U.S. 787, 794 (1966)); see also *Friedman v. N.Y. City Admin. for Children's Servs.*, No. 04-CV-3077(ERK), 2005 WL 2436219, at *7 (E.D.N.Y. Sept. 30, 2005) (citations and quotations omitted).

Applying this theory in *Dennis v. Sparks*, 449 U.S. 24 (1980), the Supreme Court held that private parties who corruptly conspired with a judge, a state actor, acted "under color" of state law. See *id.* at 27-28. The Supreme Court also applied the joint participation test in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941-42 (1982), in which the Court held that a corporate creditor acted "under color" of law when it invoked the aid of state officials to use state-created attachment procedures to deprive the plaintiff of his property. See *id.* at 942 ("The Court of Appeals erred in holding that in this context 'joint participation' required something more than invoking the aid of state officials to take advantage of state-created attachment procedures.").

While *Lugar* arose in the context of prejudgment attachments of property, there is a stronger basis for extending the holding of a case where a defendant deliberately and wrongfully caused a violation of the plaintiff's constitutional rights. Specifically, in the context of a criminal prosecution under 18 U.S.C. § 1951, it has been held that a private actor may be found guilty of extortion under color of official right. The basis for this holding is "the precept that an individual

with the requisite criminal intent may be held liable as a principal if he is a cause in fact in the commission of a crime, notwithstanding that the proscribed conduct is achieved through the actions of innocent intermediaries." *United States v. Margiotta*, 688 F.2d 108, 131 (2d Cir. 1982). As the same reasoning would apply to a prosecution under the federal civil rights laws, see e.g. *United States v. Lester*, 363 F.2d 68, 72 (8th Cir. 1966), and there is no logical reason why it should not apply in the context of a civil action.

Particularly important here is *Coakley v. Jaffe*, 49 F.Supp.2d 615 (S.D.N.Y.1999), a case in which private actors manipulated the evidence they presented to a county assistant district attorney, leading to the arrest and prosecution of the plaintiffs. Judge Rakoff rejected the private defendants' argument that the plaintiffs failed to plead actions taken "under color" of law, stating:

> [The Defendants] also argue that the § 1983 false arrest claims against them should [be] dismissed because their actions were not taken under color of law. However, "[p]rivate persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 [claims]," even if the state actor himself is immune from liability. Here, the plaintiffs allege that [the private actors] wilfully caused defendant Driscoll, an Assistant District Attorney, to violate plaintiffs' rights by manipulating the evidence presented to the Grand Jury. Drawing every reasonable inference in favor of the plaintiffs, the Court concludes that plaintiffs have, at least for present purposes, sufficiently pled the existence of joint action that warrants treating [the private actors] as state actors for purposes of assessing plaintiffs' federal false arrest claim.

*Id.* at 624 (external quotation mark omitted). Plaintiffs allegations against these Defendants who are enmeshed with the Islip Defendants is pled with specificity based upon reasonable inferences and drawn in as much detail as possible. In determining whether Plaintiff stated a claim in this matter, the decision in *Gill v. Silver Inv'rs Inc.* is particularly instructive:

> First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.*; see also *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) ("To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law."); *Schiff v. Suffolk Cty. Police Dep't*, No.

> 12-cv-1410, 2015 WL 1774704, at *5 (E.D.N.Y. Apr. 20, 2015)
> (same). "Under color" of law has been interpreted to mean the same
> thing as "state action" under the Fourteenth Amendment. *Rendell-
> Baker v. Kohn*, 457 U.S. 830, 838 (1982).

*Gill v. Silver Inv'rs Inc.*, No. 16 CV 3219 (LDH), 2016 WL 4099098, at *3 (E.D.N.Y. Aug. 2,

2016) (external quotation mark omitted and internal citations preserved). Eastern District of New

York Judge Hon. Judge LaShann DeArcy Hall held that "Private individuals who are not state

actors may nonetheless be liable under § 1983, however, if they have conspired with or engaged

in joint activity with state actors." Furthermore, "[t]o state a Section 1983 conspiracy claim

against a private entity, Plaintiffs must allege: (1) an agreement between a state actor and a

private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done

in furtherance of that goal causing damages." *Id.* (internal citations and quotations omitted).

Plaintiffs' Complaint meets the three prong test as it alleges an agreement between

Defendants, acts used by the Defendants to deprive the Plaintiffs of their constitutional rights,

and several overt acts in furtherance of the goal. *Middleton v. The City of New York*, 2006 WL

1720400 (E.D.N.Y.) The goal was harm, retaliation for Nin's speaking out, and the injury

concrete and definite as already recognized by this Court. The pleadings evidence a conspiracy

for which Defendants fail to meet their burden in seeking dismissal.

Further, such request for dismissal must also be denied as conspiracies are by their very

nature secretive, can rarely be proven by direct evidence, and often must be proven by

circumstantial evidence. *Brewster v. Nassau County*, 349 F. Supp.2d 540 (E.D.N.Y. 2004);

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *Rounseville v. Zahl*, 13 F. 3d 625, 632

(2d Cir. 1994), see, e.g., *United States v. Rivera*, 971 F.2d 876, 890 (2d Cir.1992); *United States*

*v. Pitre*, 960 F.2d 1112, 1121 (2d Cir.1992).

Contrary to Ms. Zwilling's assertions otherwise, in setting forth a 42 U.S.C. § 1983

claim, a Plaintiff is not required to list the place and the date of Defendants' meetings and the

summary of their conversations when she pleads conspiracy, but the pleadings must present facts

tending to show agreement and concerted action. *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376

(S.D.N.Y. 2005).

### III.  ALTHOUGH THE WEAPONS ARE RETURNED, PLAINTIFFS DAMAGES CONTINUE AND SUCH PLEADINGS ESTABLISH A FIFTH AMENDMENT TAKINGS VIOLATION

42 USC § 1983 protects against municipal actions that violate a property owner's rights to due process, equal protection of the laws and just compensation for the taking of property under the Fifth and Fourteenth Amendments to the United States Constitution. *Town of Orangetown* v. *Magee*, 88 N.Y.2d 41, 49, 643 N.Y.S.2d 21, 665 N .E.2d  1061 (1996).

Defendants claim that Plaintiffs were not denied equal protection but they ignore the that Plaintiff was targeted and both Plaintiffs deprived of weapons albeit, according to Defendants, the actions taken were because of Nin's statement. See also, *Olech*, *supra*.

The fountainhead of modern "takings" jurisprudence is the decision of the Supreme Court of the United States in *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles, California*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987).

The Court in First English Evangelical Lutheran Church of Glendale provided a modern interpretation of Justice Holmes' opinion for the Court in *Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), that "[t]he general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Id.*, at 415, 43 S.Ct., at 160. Later cases have unhesitatingly applied this principle. *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California*, 482 U.S. 304, at 316–317.

The Fifth Amendment guarantees that no one will "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation," U.S. Const. amend. V, and it has been made applicable to the states through the Fourteenth Amendment. Albeit accused of wrongdoing, government action "must measure up to the essentials of due process and fair treatment." *Kent* v. *United States*, 383 U. S. 541, 562 (1966).

There must be no punishment until finding of guilty. See *Ingraham* v. *Wright*, 430 U. S. 651, 671–672, and n. 40, 673–674 (1977); *Gregory* v. *Chicago*, 394 U. S. 111, 112 (1969); *Thompson* v. *Louisville*, 362 U. S. 199, 206 (1960). In *Stack* v. *Boyle*, 342 U. S. 1, 4–5 (1951), the Supreme Court stressed the importance of a person's right to freedom until proved guilty. The

restrictions and constraints placed upon Plaintiffs were patently unreasonable. Even if Plaintiff Nin was somehow reasonable, which it was not, Defendants simply had no basis to approach, seize, demand property, and continue to limit Plaintiff Tritschler's ability to bear arms or property without due process of law.

Both Plaintiffs rights were violated by such false complaint to which Defendants knew, and had reason to know, was brought for a collateral and improper purpose. It is axiomatic that "[d]ue process requires that a pretrial detainee not be punished." *Bell* v. *Wolfish,* 441 U. S., at 535, n. 16. That liberty, a recognized due process right by Supreme Court jurisprudence, extends to dignity and bodily integrity. See *Schmerber* v. *California,* 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966). One of the purposes of imposing procedural constraints on decisions affecting life, liberty, or property is to reduce the incidence of error. See *Fuentes* v. *Shevin,* 407 U. S. 67, 80–81 (1972).

Defendants deprived Plaintiffs of fundamental civil and constitutional rights without due process and continued to further that conspiracy among Defendants at every stage of these proceedings – Defendant LoRusso stating that Plaintiffs could not have weapons and Defendant Komoronski, the head of the pistol section, witnessed, endorsed and cooperate with Defendants, all Defendants, to injure Plaintiffs for an improper purpose. See *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO* v. *Town Bd. of Huntington,* 31 F.3d 1191, 1194 (2d Cir. 1994).

Accordingly, Defendants motion to dismiss must be denied as evidenced by Your Honor's previous Court Order requiring the Defendants cease the continued deprivation of property and were ordered return the chattel, the weapons required for the Plaintiffs' vocation.

## IV.   DEFENDANTS ARE NOT ENTITLED QUALIFIED IMMUNITY AND DEFENDANTS OFFER NOTHING TO MEET THEIR BURDEN IN DISMISSAL, REBUTTING THE PLEADINGS, AFFIDAVITS OR EXHIBITS, OR SEEKING QUALIFIED IMMUNITY

"[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Wilson* v. *Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

The Supreme Court established the analysis for determining whether an officer is entitled to qualified immunity. See *Saucier* v. *Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151. "[T]he next, sequential step is to ask whether the right was clearly established." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202, 121 S.Ct. 2151.

The United States Supreme Court recently receded from *Saucier*, however, in *Pearson*, holding that when "resolving government officials' qualified immunity claims, courts need not first determine whether facts alleged or shown by plaintiff make out a violation of a constitutional right. *Pearson* v. *Callahan*, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Therefore, at the Court's own discretion, it can first determine whether a constitutional right was clearly established at the time of defendant's alleged misconduct. In determining whether a constitutional right is "clearly established," as required for plaintiff to defeat a government official's claim of qualified immunity in civil rights actions, the relevant dispositive inquire is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Johnson* v. *Newburgh Enlarged School District*, 239 F.3d 246, 250–251 (2d Cir. 2001).

*Edrei* v. *Maguire*, No. 17-2065, August Term, 2017 (2d Cir. June 13, 2018), held that "(1) that, on the allegations before us, which we must accept as true, the plaintiffs have stated a Fourteenth Amendment excessive force claim and (2) that purposefully using the LRAD in a manner capable of causing serious injury to move non-violent protesters to the sidewalks violated law that was clearly established as of 2014." Not all instances, such as the LRAD, must be contemplated as, here, must be clearly delineated to afford qualified immunity.

Defendants offer a complete denial to all the allegations and no depositions or anything to rebut the pleadings and sworn testimony of Plaintiffs showing the constitutional violations they suffered. Defendants know and have reason to know that that in a light taken most favorably to Plaintiffs, Defendants cannot possibly state that the removal of weapons from both Plaintiffs should be subject to qualified immunity any more than Defendants, and all of them, had any reason to believe that the complaint was not malicious and designed to injure Plaintiff Nin and those around her.

Like other situations, this case is one where "two conflicting stories best captures what happened on the street, *Graham* will not permit summary judgment in favor of the defendant official." *Saucier*, 533 U.S. at 216. Although this is not an excessive force case, Defendants' attorney's denial in the face of sworn testimony, exhibits and pleadings articulating that Defendants took actions, conspiring with one another, to harm inflict constitutional injuries upon Plaintiffs cannot possibly entitle Defendants to anything less than a jury trial.

Plaintiffs respectfully request that this Honorable Court deny Defendants' motion in its entirety and grant Plaintiffs all other relief it deems just and proper.

### V. PLAINTIFFS RESPECTFULLY REQUEST THAT YOUR HONOR ALLOW AN AMENDMENT TO THE COMPLAINT IF NOT A CONVERSION OF THE MATTER TO SUMMARY JUDGMENT WITH THE ORDERING OF DEPOSITIONS SHOULD YOUR HONOR BE INCLINED TO GRANT DEFENDANTS DISMISSAL ON THE PLEADINGS

Should Your Honor not Order the deposition of Defendants and convert this matter to a Summary Judgment motion, Plaintiffs would request leave to amend as dismissals under Rule 12 are often granted with leave to re-plead, unless the Court determines that such leave would be futile. See *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party"). When dismissing a claim under Rule 12, leave to amend is generally freely granted unless it appears that "the substance of the claim pleaded is frivolous on its face...." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988) (citing *Moorish Science Temple of Am., Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir.1982)).

Your Honor, this Court, recognized that these claims have merit when Your Honor Ordered the immediate return of Plaintiffs weapons and Ordered the parties to proceed with discovery.

Fed.R.Civ.P. 15 governs the amendment process of civil pleadings and provides that a plaintiff should be allowed the opportunity to test his claim on the merits, as long as the underlying facts that are relied upon are the subject of proper relief. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Granting an opportunity to re-plead is futile where the problems with the complaint are substantive, and would not be cured by better pleading. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000).

Accordingly, long standing law in this circuit should afford Plaintiffs the opportunity to cure a defect after Plaintiffs' laborious attempt to plead with specificity and factual detail each of the allegations contained in Plaintiffs' Amended Complaint. *Cinevert v. Varsity Bus Co.*, No. 12-

CV-1223 RRM VVP, 2014 WL 4699674, at *6 (E.D.N.Y. Sept. 22, 2014). Had Defendants requested a premotion conference prior to this request for relief, perhaps we could have avoided this request and unfortunate series of delays.

### CONCLUSION

Your Honor should deny the Defendants request for dismissal in its entirety if not Order the depositions of Defendants together with the conversion of Defendants' request to a Motion for Summary Judgment to expedite the resolve of such matters while conserving judicial resources.

Alternatively, Plaintiffs respectfully request that Your Honor either deny Defendants' request for dismissal in its entirety or, alternatively, allow Plaintiffs an opportunity to amend its complaint to address any pleading deficiencies together with all other relief that this Honorable Court deems just and appropriate given the above circumstances.

DATED AT    Suffolk, New York
May 14, 2020

RICHARD YOUNG, ESQ. (RWY7633)
*ATTORNEY FOR PLAINTIFFS*

**CORY H. MORRIS** (CM 5225)
THE LAW OFFICES OF CORY H. MORRIS
*OF COUNSEL TO RICHARD YOUNG, ESQ.*
*Attorney for the Plaintiffs*
135 Pinelawn Road, Suite 250s
Melville NY 11747
Phone:   (631) 450–2515
FAX :   (631) 223–7377

To:   ARLENE ZWILLING, ESQ.
SUFFOLK COUNTY ATTORNEY'S OFFICE
H. Lee Dennison Building
Veteran's Memorial Highway
Hauppauge NY 11788

William D. Wexler, Esq.
816 Deer Park Avenue
North Babylon, N.Y. 11703